In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2053

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DURYEA ROGERS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 13-CR-00159— **Sarah Evans Barker**, *Judge.*

ARGUED JANUARY 8, 2015 — DECIDED FEBRUARY 4, 2015

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Duryea Rogers pleaded guilty to conspiracy to commit armed bank robbery, armed bank robbery, and brandishing a firearm during a crime of violence (in this case, a bank robbery). He challenges the district court's imposition of a two-level enhancement for carjacking under U.S.S.G. § 2B3.1(b)(5). We affirm.

## I. Background

On the morning of June 26, 2013, Duryea Rogers and Xavier Hardy (as well as three other co-conspirators) set out to rob a bank. To that end, they drove to the Community Bank in Fishers, Indiana, parked in a lot across the street, and waited. When the first bank employee arrived at just before 8 a.m., they drew their guns on her and forced her into the bank. Under the direction of Rogers, the employee did everything that she would normally do: she turned on lights, deactivated the alarm, placed her purse on the counter, and unlocked the front door. But she did not give the all-clear signal indicating to other employees that it was safe to enter the bank.

Rogers escorted the employee to the vault and ordered her to open it but she could not. (To deter robberies, bank vaults often cannot be opened by a single employee—but advance deterrence relies on criminals knowing this and this group did not.) The robbery was a failure: Rogers and Hardy never obtained any cash from the bank.

But they did not leave empty-handed. While Rogers and the employee struggled with the vault, Hardy rummaged through the employee's purse, and took her car keys and identification. The pair then directed the employee into the break room, ordered her to lie on the floor, and zip-tied her hands and feet together. Rogers and Hardy fled in the employee's Chevy Equinox, which was parked next to the bank. The other co-conspirators fled in a minivan as well as the Chevy Tahoe that Rogers and Hardy had driven to the bank that morning.

What the pair did not realize was that FBI agents were

outside the bank waiting for them; indeed, they had been watching them the entire morning as another co-conspirator, Deandre Armour, had been under surveillance for months for suspicion of robbing other banks in Indiana. Various car chases ensued. Ultimately, Rogers and Hardy deserted the Equinox in a hotel parking lot and fled on foot. Hardy was arrested nearby in possession of a .45 caliber pistol. Rogers was found by police hiding in the hotel in a closet and underneath a laundry chute. Officers also located several items discarded by Rogers, including a .40 caliber handgun, two-way radio, and items of clothing worn by him during the bank robbery. Finally, the other three co-conspirators, including Armour, were also arrested without incident.

On April 28, 2014, Rogers pleaded guilty to conspiracy to commit bank robbery (18 U.S.C. § 371), armed bank robbery (18 U.S.C. §§ 2113(a) and 2113(d)), and knowingly using, carrying, and brandishing a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)(ii)). The court sentenced Rogers to 60 months' imprisonment on each of Counts One and Two (to be served concurrently), and 84 months on Count Three (to be served consecutively), followed by 5 years of supervised release.

Rogers's plea agreement left open the issue of whether he should receive the two-level enhancement for carjacking. The probation officer recommended application of the enhancement, while Rogers argued that the behavior was already factored into his sentence with the application of a two-level enhancement for restraining the victim. Over Rogers's objection, the district court concluded that the two-level enhancement should apply. Rogers appeals.

## II. Analysis

We employ the usual dual standard, reviewing for clear error the district court's factual findings and *de novo* its application of those facts to the Guidelines. *United States v. Medina*, 695 F.3d 702, 704 (7th Cir. 2012). When interpreting the Guidelines, we begin with the text of the provision and the plain meaning of the words in the text. *United States v. Hill*, 645 F.3d 900, 907 (7th Cir. 2011). In addition to the actual language of the Guidelines, we must also consider the Application Notes as they are considered part of the Guidelines and not mere commentary on them. *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005).

Section 2B3.1(b)(5) of the Guidelines provides for a two-level enhancement for robberies involving carjacking, which the Application Notes define as "the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation."  § 2B3.1, cmt. n. 1. Although Hardy, rather than Rogers, took the employee's keys, co-conspirator liability under § 1.B.1.3(a)(1)(B) is not at issue here; Rogers has not contested it and the facts indicate that the theft was a reasonably foreseeable part of the overall bank robbery.

At sentencing, Rogers focused on the "person and presence" requirement to argue that the Guideline did not apply to "keyjacking" incidents where the keys, rather than the car, are taken from the presence of the victim. On appeal, Rogers refines his argument, contending that the facts do not support a finding of carjacking because the keys were obtained merely by rummaging through the employee's purse, and not through

"force and violence or intimidation" as is required under the Guideline. Notably, he argues this even as he concedes that the bank robbery involved force or intimidation. The crucial distinction, according to Rogers, is not whether the robbery involved a measure of violence or intimidation, but whether the keys were obtained through the "coerced relinquishment" (his term) by the victim.

The "person and presence" argument has not been accepted by any circuit that has examined it and is easily dispatched. In holding that there is no distinction—other factors notwithstanding—between taking a victim's car outright and taking a victim's keys as merely the first action in the seizure of her car, we join our sister circuits who have examined this question in the context of 18 U.S.C. § 2119. They are uniform in construing the term "presence" broadly to include the ability to retain control of the vehicle through possession of the keys. *See, e.g., United States v. Savarese*, 385 F.3d 15, 20 (1st Cir. 2004); *United States v. Soler*, 759 F.3d 226, 235 (2d Cir. 2014); *United States v. Lake*, 150 F.3d 269, 272–73 (3d Cir. 1998); *United States v. Davis*, 233 Fed. App'x. 292, 295 (4th Cir. 2007) (per curiam unpublished); *United States v. Edwards*, 231 F.3d 933, 937 (5th Cir. 2000); *United States v. Casteel*, 663 F.3d 1013, 1020–21 (8th Cir. 2011); *United States v. Burns*, 701 F.2d 840, 843 (9th Cir. 1983) (per curiam); *United States v. Brown*, 200 F.3d 700, 705 (10th Cir. 1999).

Only the Sixth Circuit has considered directly the application of a sentencing enhancement under § 2B3.1(b)(5) to similar facts. In *United States v. Boucha*, 236 F.3d 768 (6th Cir. 2001), the defendant forced an employee to surrender to him the keys to

her car during a robbery, which he used as his escape vehicle. The defendant was convicted of bank robbery and the sentencing judge applied the two-level enhancement for carjacking. The Sixth Circuit read the federal carjacking statute in light of common law robbery principles applicable to the enhancement and found the broader interpretation of "person or presence" from the statute to conform with the language and purpose of the Sentencing Guidelines. *Id.* at 775–76. We agree and hold that, for the purpose of § 2B3.1(b)(5), a defendant who takes a victim's keys by force or threat of force, and who later takes the car (which is sufficiently proximate for the owner to access it), may be sentenced as if he took the victim's car in the presence of the victim by force or threat of force.

Rogers's second argument—that the keys were not obtained by "force and violence or by intimidation"—is equally unavailing. To accept this argument, we would have to ignore the basic fact of this case, namely that the bank employee was, at all relevant times, acting under the orders of armed men. The incident began with Rogers and Hardy accosting the employee at the back door and drawing their weapons on her. It ended with them leading her to the break room and ordering her to lie on the floor, where they zip-tied her. In the interim, she was in the presence of at least one of the robbers—and his weapon—at all relevant times. These facts more than suffice to establish that the keys were obtained through "force and violence or by intimidation."

### III. Conclusion

The district court's imposition of a two-level enhancement to Rogers's base offense level for bank robbery under the carjacking enhancement of § 2B3.1(b)(5) is AFFIRMED.